IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KENNETH BONNER, et al. | ) | |
| | ) | |
| v. | ) | NO. 3:04-0155 |
| | ) | |
| CHARLES M. TRAUGHBER, et al. | ) | |

TO: Honorable Todd J. Campbell, Chief District Judge

### REPORT AND RECOMMENDATION

By order entered April 1, 2004 (Docket Entry No. 4), the Court referred this action to the Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) for pretrial management of the action.

Presently pending before the Court is the defendants' motion for summary judgment (filed December 8, 2005; Docket Entry No. 47). The plaintiffs have filed a response in opposition (Docket Entry No. 67). For the reasons set out below, the Court recommends that the motion for summary judgment be granted.

### I. BACKGROUND

The plaintiffs, Kenneth Bonner, Aundra St. John, and James Martin, are inmates in the Tennessee Department of Correction ("TDOC"). They filed this action pro se and in forma pauperis seeking declaratory and injunctive relief under 42 U.S.C. § 1983 against Charles Traughber, who is the chairman of the Tennessee Board of Probation and Parole ("TBOPP"), and five members of

the TBOPP: Sheila Swearingen, William Dalton, Ray Maples, Townsend Anderson, and Larry Hassell.

The plaintiffs each filed an application for clemency with the TBOPP in 2003. The Governor of Tennessee, pursuant to his statutory powers under Tenn. Code Ann. § 40-28-104(a)(9), has delegated to the TBOPP the authority to consider applications for commutations and make nonbinding recommendations to him concerning the applications. Each of the plaintiffs' applications were submitted under criteria 1.(a)(iii) of the Tennessee Governor's guidelines for an application for commutation. Criteria 1.(a)(iii) provides that:

> 1. The Governor will give serious consideration to Commutation requests where the petitioner has demonstrated, by clear and convincing evidence that:
>
> a.       The petitioner has made exceptional strides in self-development and self improvement, and would be a law-abiding citizen; and either
> . . .
> iii. Petitioner has been rehabilitated, is no longer a threat to society, has demonstrated, to the extent his age and health permit, a desire and an ability to maintain gainful employment and fairness supports the petitioner's application.

See Docket Entry No. 49. Plaintiff Martin also submitted his application under criteria 1.(a)(ii) which provides:

> Petitioner's parent, spouse, or child has a life-threatening illness, said illness is supported by appropriate medical documentation, and the petitioner is the only person able to assist in the care of such person.

In each of the plaintiffs' cases, the TBOPP determined that the plaintiffs would not be granted an executive clemency hearing and that they did not meet the criteria under which their applications were submitted. The plaintiffs were informed of the decision by letter. See Exhibit A to Complaint (Docket Entry No. 1).

2

Case 3:04-cv-00155    Document 73    Filed 02/01/06    Page 2 of 11 PageID #: 283

The plaintiffs, who are black, allege that their civil rights were violated because of the manner in which the TBOPP made the respective clemency decisions in their cases and because black inmates are systematically discriminated against with respect to review and denial of formal clemency hearings as compared to white applicants. By the order of referral, process was issued to the defendants on the plaintiffs' claim concerning alleged discrimination in the clemency proceedings. All other claims alleged by the plaintiffs were dismissed pursuant to 28 U.S.C. § 1915 and § 1915A. See Memorandum and Order entered April 1, 2004 (Docket Entry Nos. 3-4).

**II. MOTION FOR SUMMARY JUDGMENT**

The defendants contend that there are no genuine issues of material fact and that they are entitled to summary judgment as a matter of law. They assert that the power to grant clemency is vested solely in the Governor of Tennessee and that they have the discretionary authority to not recommend an applicant for clemency. They contend that the plaintiffs' allegations of racial discrimination are conclusory and are not supported by proof showing that they were treated differently than similarly situated Caucasian inmates. Specifically, the defendants argue that only eleven inmates convicted of Murder 1 were granted clemency hearings during the relevant time period of 1996-2003 and that the plaintiffs, who were each also convicted of Murder 1, are not similarly situated to these eleven inmates, three of whom are black. The defendants assert that the plaintiffs' applications for clemency were judged solely upon their merits and that there is no evidence before the Court which gives rise to an inference that there was purposeful discrimination on the part of the defendants.

## III. PLAINTIFFS' RESPONSE

The plaintiffs respond by first arguing that the rules and regulations governing clemency proceedings create a protected liberty interest in being fully informed of the reasons why clemency applications are denied. They contend that their due process rights were violated because the letters they received rejecting their applications did not fully inform them of such reasons.

With respect to their equal protection claim, the plaintiffs contend that genuine issues of material fact exist regarding whether Caucasian inmates that applied for commutation under criteria 1.(a)(iii) received more favorable treatment than black inmates. The plaintiffs argue that all of the white inmates who were given commutation hearings had convictions for prison disciplinary offenses which were disregarded by the defendants, despite the fact that, in their supplemental responses to the plaintiffs' interrogatories, the defendants noted the plaintiffs' disciplinary records as a reason their applications were denied. They further contend that some of the white applicants committed criminal offenses while in TDOC custody and these offenses were likewise disregarded by the defendants. The plaintiffs assert that the TBOPP's disregard of this information evidences a pretext for discrimination. Further, the plaintiffs argue that the defendants, during discovery, did not provide to them the information about the disciplinary histories of the white applicants and that their failure to provide this information demonstrates a discriminatory intent on their part.

In their supporting joint affidavit (Docket Entry No. 68), the plaintiffs set forth evidence regarding five Caucasian inmates who were not convicted of Murder 1 and who were granted clemency hearings despite having a record of convictions for prison disciplinary offenses. See Docket Entry No. 68 at 3-5.

## IV. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Summary judgment will not lie if the dispute about a material fact is genuine: "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. See Lashlee v. Sumner, 570 107 (6th Cir. 1978).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970) (footnote omitted). Accord Adams v. Union Carbide Corp., 737 F.2d 1453, 1455-56 (6th Cir.), cert. denied, 469 U.S. 1062 (1984). Inferences to be drawn from the underlying facts must also be considered in the light most favorable to the party opposing the motion. United States v. Diebold, Inc. 369 U.S. 654, 655 (1962); Watkins v. Northwestern Ohio Tractor Pullers Ass'n, 630 F.2d 1155, 1158 (6th Cir. 1980).

## V. CONCLUSIONS

A. Due Process Claim

The plaintiffs contend that Policy 501.90 and Rule 1100-1-1-.15(c)(2) of the Rules and Regulations of the Tennessee Board of Paroles creates a protected liberty interest in being fully

5

informed of the reason(s) why they did not meet the criteria for clemency under which they applied. See Attachments to Docket Entry No. 49. They argue that the policy and rule at issue use the word "shall" in discussing the notification process and thus create a mandatory duty to fully inform rejected applicants of why they were rejected. The plaintiffs contend that the form letters they received failed to comply with this requirement and violated their procedural due process rights.

To the extent that this claim is still a part of this action subsequent to the Court's preliminary review of the complaint as set out in the Order and Memorandum entered April 1, 2004 (Docket Entry Nos. 3-4), the Court finds that this claim has no legal merit.

In Wright v. Trammell, 810 F.2d 589 (6th Cir. 1987), the Sixth Circuit Court of Appeals found that the Tennessee parole system and rules do not create a liberty interest protected by the due process clause. As such, any procedural shortcomings or alleged errors in the proceedings simply do not raise constitutional concerns. Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995). Further, a state defendant's failure to comply with state laws or the policies does not provide a basis for a claim under 42 U.S.C. § 1983. See Black v. Parke, 4 F.3d 442, 448 (6th Cir. 1993).

Additionally, the plaintiffs' assertion that mandatory language contained in Policy 501.90 and TBOPP Rule 1100-1-1-.15 creates a liberty interest is simply incorrect. The use of mandatory language in a state statute or policy no longer determines whether the state has created a protected liberty interest. Sandin v. Conner, 515 U.S 472 (1995).

B. Equal Protection Claim

The United States Supreme Court has held that "[t]he central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the

6

basis of race." Washington v. Davis, 426 U.S. 229, 239 (1976). The Equal Protection Clause does not, however, require the exact same treatment of all persons nor prevent government officials from exercising discretionary authority.

A plaintiff alleging an equal protection violation has the burden of proving the existence of purposeful discrimination. McCleskey v. Kemp, 481 U.S. 279, 292 (1987) (quoting Whitus v. Georgia, 385 U.S. 545, 550 (1967)). Thus, to prevail on their equal protection claim, the plaintiffs must prove that a racially discriminatory intent or purpose was a factor in the decision of the TBOPP in their cases by showing that the defendants intentionally discriminated against them because of their membership in a protected class. McCleskey, supra; Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 265-66 (1977); Copeland v. Machulis, 57 F.3d 476, 480 (6th Cir. 1995) (per curiam). It is not enough for the plaintiffs to show merely that they were treated differently from others who are similarly situated. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). A disparate impact or effect, by itself, is not sufficient to establish an equal protection claim. Copeland, 57 F.3d at 481 (citing Horner v. Kentucky High Sch. Athletic Ass'n, 43 F.3d 265, 276 (6th Cir. 1994)). Finally, the subjective beliefs of the plaintiffs are insufficient to show that a genuine issue of material fact exists for trial in an equal protection case. See McMillian v. Svetanoff, 878 F.2d 186, 190 (7th Cir. 1989).

In the instant action, the plaintiffs have no direct proof of a racially discriminatory intent or purpose on the part of the defendants during the review of the plaintiffs' clemency applications. Further, despite obtaining substantial discovery from the defendants regarding clemency applications for the time period of 1996-2003, the plaintiffs have not set forth any statistical evidence in support of their claim of racial discrimination.

7

Indeed, the plaintiffs have submitted very little in support of their claim. The only actual evidence they have submitted is evidence comparing themselves to a small number of white inmates who were given clemency hearings. The plaintiffs contend that these inmates had records of prison disciplinary convictions which were similar to or worse than their own records.

The Court has reviewed this evidence and finds that it falls well short of supporting an equal protection claim. No reasonable jury could find in favor of the plaintiffs based upon the evidence which is before the Court.

First, the plaintiffs' evidence is, at best, only minimally probative of the intent of the defendants. It is not disputed that each of the other inmates identified by the plaintiffs had a history of prison disciplinary infractions. Nonetheless, each plaintiff also has a similar history. Thus, comparison of the plaintiffs to these other inmates shows that, with respect to the screening criterion of an inmate's prison disciplinary history, the plaintiffs were no better candidates for clemency than the other inmates.[1]

Second, the evidence touches upon only one factor involved in the clemency decision process and fails to take into account the multitude of other factors which come into play in clemency decisions. The Governor of Tennessee, who holds the ultimate authority to make clemency decisions, has set out certain guidelines for clemency applicants. A successful applicant must show, by clear and convincing evidence, that he "has made exceptional strides in self-

---

[1] The plaintiffs also argue that the fact that the defendants, during discovery, did not turn over the disciplinary records of the other inmates at issue is itself evidence supporting their claim.

This argument is wholly unpersuasive. First, as set out herein, the Court does not view the evidence of the disciplinary records as supporting the plaintiffs' claims. Second, whether or not such documents were turned over during discovery by the defendants is not probative in any manner of the intent of the defendants when they made their decisions regarding the plaintiffs' clemency applications in 2003.

8

development and self improvement, and would be a law-abiding citizen." See Attachments to Docket Entry No. 49. Additionally, the applicant must show either: a) that he or an immediate family member has a documented life-threatening illness or severe chronic disability which would be mitigated or relieved by the requested clemency; or b) that he "has been rehabilitated, is no longer a threat to society, has demonstrated, to the extent his age and health permit, a desire and an ability to maintain gainful employment and fairness supports the petitioner's application." Id. Further, in Rule 1100-1-1-.15(d)(6) of the Rules and Regulation of the Tennessee Board of Paroles, the TBOPP has set out a non-exhaustive list of factors which are to be considered in reviewing the merits of the clemency application including the nature of the crime and its severity, the applicant's institutional record, the applicant's previous criminal record, the views of the trial judge and attorney general who prosecuted the case, the sentences, ages, and comparative degree of guilt of co-defendants or others involved in the offense, the applicant's circumstances if returned to the community, any mitigating circumstances surrounding the offense, the views of the community, victims or families, staff, parole officers, or other interested parties, and medical and/or psychiatric evaluations if applicable. See Attachments to Docket Entry 49 at 37.

As these guidelines and rules show, the decision on the issue of whether a convicted prisoner should be granted clemency is, by its very nature, discretionary and takes into account a variety of different factors concerning the applicant. There is no rigid formula to guide the clemency decision. The plaintiffs' comparison of themselves to other inmates based on only their respective prison disciplinary records is unpersuasive for this very reason alone as it fails to address the multitude of other factors involved in the decisionmaking process.

The plaintiffs have simply not presented sufficient circumstantial evidence which supports their claim that the defendant members of the TBOPP decided to deny them a clemency hearing because they are black. They are certainly disappointed in the denial of their clemency applications. However, an applicant's disappointment does not support a claim of a constitutional violation. In the absence of some type of evidence of invidious discrimination, this Court has no authority to engage in a judicial review of the clemency decisions of the TBOPP, a comparison of who is and is not a worthy applicant, or any other type of review of the relative merits of applicants who come before the TBOPP requesting clemency from the sentences imposed for crimes of which they were convicted. Cf. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979) (noting, in the context of a due process claim, the sensitive and discretionary nature of parole decisionmaking and that there is "no constitutional guarantee that all executive decisionmaking must comply with standards that assure error-free determinations"). These types of matters are properly within the discretion of the state agency to which they are assigned.

The plaintiffs also point to evidence that one white inmate who was granted a clemency hearing "had obtained additional criminal charges while still in custody of the department of corrections." See Docket Entry No. 67 at 5. Again, this evidence fails to show that the defendants acted with a discriminatory intent or purpose with respect to the plaintiffs' applications for clemency.

## RECOMMENDATION

Based on the foregoing, the Court respectfully RECOMMENDS that the defendants' motion for summary judgment (Docket Entry No. 47) be GRANTED and this action be DISMISSED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET GRIFFIN
United States Magistrate Judge

11